UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:19-cv-00016-MR

| | |
|---|---|
| RONALD MCCLARY, ) ) Plaintiff, ) ) vs. ) ) MICHAEL BUTLER, ) ) Defendant. ) _____ ) | ORDER |

**THIS MATTER** comes before the Court on the following:

(1) Plaintiff's Motion for Reconsideration [Doc. 69];

(2) Plaintiff's Motion for Default Judgment [Doc. 71];

(3) Defendant's Motion for Summary Judgment [Doc. 75]; and

(4) Plaintiff's letters [Docs. 70, 87, 88].

## I. PROCEDURAL BACKGROUND

Pro se Plaintiff Ronald McClary ("Plaintiff") is a North Carolina inmate currently incarcerated at Scotland Correctional Institution in Laurinburg, North Carolina. Plaintiff filed this action on February 11, 2019, pursuant to 42 U.S.C. §1983, against Defendant Michael Butler, a correctional officer at Alexander Correctional Institution ("Alexander"), in his official and individual capacities. [Doc. 1 at 2]. Plaintiff claimed that Defendant Butler violated

his Eighth Amendment rights by sexually assaulting him. [Id. at 4-5]. Plaintiff alleged that, on May 14, 2018 at approximately 7:30 a.m., Defendant Butler sexually assaulted Plaintiff by grabbing and squeezing Plaintiff's testicles. [Id.]. Plaintiff alleged that the incident "is on video." [Id. at 5]. Plaintiff alleged that he suffered pain from the assault and that he was not allowed to get medical treatment. [Id. at 5]. Plaintiff's claim survived initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A.[1] [Doc. 25].

On November 2, 2020, the Court appointed the North Carolina Prisoner Legal Services ("NCPLS") to conduct discovery for Plaintiff. [Doc. 57 at 2]. The Court set the deadline to complete discovery as February 25, 2021. [Id. at 4]. NCPLS attorney Cory Tischbein filed a Notice of Appearance for the limited purpose of assisting Plaintiff with conducting discovery. [Doc. 58]. On February 10, 2021, 15 days before the expiration of the discovery deadline, Attorney Tischbein filed a notice in this matter advising the Court that he had assisted Plaintiff in conducting discovery and had provided advice and assistance to Plaintiff. [Doc. 61]. Attorney Tischbein also moved to withdraw as Plaintiff's counsel that day, which the

---

[1] Subsequently, Plaintiff filed an Amended Complaint and a Second Amended Complaint. Ultimately, however, Plaintiff's Second Amended Complaint was essentially identical to Plaintiff's original Complaint and this matter proceeded as initially ordered by the Court. [Docs. 31, 37; see Docs. 1, 35, 34, 39].

Court allowed. [Docs. 62, 63].

Before the expiration of the discovery deadline, Plaintiff filed two "Motion[s] for Leave Judicial Notice," in which he asked the Court to take judicial notice of the fact that Defendant produced in discovery a video containing footage from May 18, 2018, when the incident at issue occurred on May 14, 2018, and to order that Plaintiff be allowed to view this video. [Docs. 64, 65]. The Court denied the motions for judicial notice, advising Plaintiff that he may address the video in his summary judgment submissions. [Doc. 68 at 2]. The Court, however, granted Plaintiff's request to view the video and ordered that provisions be made for Plaintiff to view any videos produced by Defendant in discovery in this matter at his then current place of incarceration. [Id. at 5-6].

On March 4, 2021, Plaintiff moved the Court to compel production of certain documents "not offered during discovery." [Doc. 66 at 1]. The Court denied Plaintiff's motion to compel because Plaintiff did not include copies of the disputed discovery requests with his motion, because he failed to certify that he had attempted in good faith to resolve the discovery dispute, and because the deadline for discovery had expired. [Doc. 68 at 3-4]. Plaintiff has moved the Court to reconsider its March 10, 2021 Order denying Plaintiff's motion to compel discovery. [Doc. 69]. Plaintiff has also moved

for default judgment against Defendant. [Doc. 71]. These motions are pending before the Court.

On May 28, 2021, Defendant moved for summary judgment. [Doc. 75]. In support of this motion, Defendant submitted a memorandum; a Statement of Material Facts; the Affidavits of Benjamin Carver and Defendant Butler; the NCDPS Offender Sexual Abuse and Sexual Harassment Policy ("NCDPS Sexual Abuse Policy"); Alexander's Sexual Abuse Elimination (PREA) Standard Operating Procedure ("PREA SOP");[2] an Incident Report for an incident occurring on May 18, 2018; and video footage of Plaintiff's wing taken on May 18, 2018 at approximately 8:00 a.m.[3] [Docs. 76, 76-1 through 76-7, 77].

On June 3, 2021, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of

---

[2] PREA refers to the Prison Rape Elimination Act, 34 U.S.C. § 30301. It seeks to establish "zero tolerance" for the incidence of prison rape. The purpose of this Act is to protect inmates in correctional facilities from sexual abuse and sexual assault. Gadeson v. Reynolds, No. 2:08-3702-CMC-RSC, 2009 WL 4572872, at *3 (D.S.C. Dec. 4, 2009). The purpose of the PREA SOP "is to provide guidelines for the **prevention, detection, response, investigation, prosecution** and tracking of offender on offender and staff on offender sexual abuse at Alexander Correctional Institution." [Doc. 76-2 at 1 (emphasis in original)]. The PREA SOP mirrors, in large part, the NCDPS Sexual Abuse Policy.

[3] As more fully addressed below, Defendant proceeds in this matter as if the incident that is the subject of this action occurred on May 18, 2018, not May 14, 2018, as alleged by Plaintiff.

4

the manner in which evidence could be submitted to the Court. [Doc. 81]. In his timely response to Defendant's motion, Plaintiff submitted a memorandum; his own affidavit; grievance records; documents from Plaintiff's related action in the North Carolina Industrial Commission; an Alexander Video Recording Request for footage from May 18, 2018; an observation log of Plaintiff's movements; and an April 8, 2021 letter from the North Carolina State Bar acknowledging Plaintiff's Bar complaint against Attorney Adrina Bass. [Docs. 82, 82-1].

This matter is now ripe for adjudication.

## II. PLAINTIFF'S MOTIONS AND LETTERS

### A. Motion for Reconsideration

Plaintiff moves the Court to reconsider its denial of Plaintiff's motion to compel discovery. [Doc. 69]. Plaintiff argues that it was impossible for him to seek an extension of the discovery deadline because he did not "[get] the discovery" from appointed counsel until after the deadline because the Attorney General "wait[ed] until the last day of [the] deadline to send discovery" to his appointed counsel. Plaintiff also argues, in one instance, that his discovery counsel knew that discovery was incomplete and the video of the day of the incident "was destroyed." [Doc. 69 at 2]. Later, however, Plaintiff claims that his appointed counsel "did not become aware [though]

5

should have of incomplete discovery…." [Id.]. Finally, Plaintiff claims that the Court should have relaxed the discovery rules for Plaintiff because he is a pro se litigant and should not have been required to write a certified letter to opposing counsel. [Id. at 3].

Plaintiff has not presented any grounds for the requested relief. It was not impossible for Plaintiff to seek an extension of the discovery deadline. Contrary to Plaintiff's assertions, his appointed counsel assisted Plaintiff with discovery and moved to withdraw as Plaintiff's counsel 15 days before the end of the discovery deadline. Plaintiff could have moved pro se for an extension of the discovery deadline any time after his counsel withdrew either before or after the expiration of the discovery deadline. Moreover, Rule 37(a) of the Federal Rules of Civil Procedure does not require that Plaintiff have written a certified letter to opposing counsel to resolve the discovery dispute, as Plaintiff contends. Rather, Rule 37(a) requires Plaintiff to certify, i.e., to attest, to the Court that he has attempted in good faith to confer with opposing counsel before engaging the Court in a discovery dispute. And Plaintiff failed to do this. Plaintiff's motion to reconsider is, therefore, denied.[4]

---

[4] Plaintiff also moves the Court to reconsider its order denying Plaintiff's motion to seal and the Court's instruction that Plaintiff may address the video issue at summary judgment. [Doc. 69 at 3-6]. Plaintiff argues that he "should not have to wait until summary judgment to seek inquiry ruling by the court" regarding the video. [Id. at 3]. There is no such thing as a pre-summary judgment "inquiry ruling." The purpose of summary judgment is to determine whether any genuine issues of material fact remain for a jury.

6

## B. Motion for Default Judgment

Plaintiff moves for default judgment against Defendant Butler, arguing that Defendant's attorney, Adrina Bass, knows that the incident at issue occurred on May 14, 2018 but "still presented the 5-18-18 video" to Plaintiff for viewing on March 18, 2021. [Doc. 71 at 1-2]. Plaintiff argues that "there is no excuse for not preserving the 5-14-18 video only to destroy evidence." [Id. at 2]. Plaintiff contends that "enough evidence exist[s] at this point for default judgment." [Doc. 71 at 3]. Plaintiff misunderstands the circumstances under which a default judgment may be entered. A default judgment may only be entered following an entry of default. Fed. R. Civ. P. 55(b)(1). An entry of default may be entered by the Clerk when a party's failure to plead or otherwise defend an action is show by affidavit or otherwise. Fed. R. Civ. P. 55(a). Defendant here has not failed to answer or defend this lawsuit and no default has been entered. There are simply no grounds for default judgment and Plaintiff's motion will be denied.

---

Moreover, Plaintiff presents no viable grounds in support of his motion to reconsider the Court's denial of his motion to seal. [See id. at 6]. The Court will, therefore, deny Plaintiff's motion to reconsider on these issues as well.

## C. Plaintiff's Letters

Also before the Court are three letters filed by Plaintiff that are directed to the undersigned and lack a case caption. [Docs. 70, 87, 88]. In previously striking such a letter, the Court advised Plaintiff that filing letters that are directed to judges of this Court is "wholly improper" and "[a]ny requests for relief must be filed as formal motions containing the case caption." [Doc. 44 at 1; see Doc. 42]. The Court has further advised Plaintiff that it "will not consider letters filed by Plaintiff regardless of the relief they seek." [Id. at 2]. Plaintiff ignored these previous admonitions and has filed three more improper letters directed to the undersigned and without a case caption. [Docs. 70, 87, 88]. The Court will, therefore, strike these letters and does not consider their contents here.

## III. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## IV. FACTUAL BACKGROUND

The forecast of evidence in the light most favorable to the Plaintiff is as follows:

In May 2018, Plaintiff was housed at Alexander on H-Block in Cell 16. [Doc. 82-1 at 12: McClary Aff.]. Defendant Butler was a correctional officer there. [Doc. 76-6 at ¶ 3: Butler Aff.]. On May 14, 2018, while Plaintiff was in his cell during breakfast time, Defendant Butler reached through the trap door and grabbed and squeezed Plaintiff's testicles and penis. [Doc. 82-1 at 12; see id. at 2]. Plaintiff did not provoke or threaten Defendant Butler, although Butler had previously threatened Plaintiff. [Doc. 82-1 at 12]. As a result of this incident, a no contact order was put in place. Defendant Butler violated it twice "appear[ing] to be obsessed with contact with [Plaintiff]."

[Id.]. Staff was warned about Defendant Butler's conduct and the incident was captured on video. [Id.].

Plaintiff filed a grievance regarding the incident which is dated May 14, 2018. In the grievance, he wrote:

> On 5-14-18 around 7:30 am breakfast time officer Butler reached in the trap and grabbed my crotch and squeezed my penis real hard with my testicles. I wanted to go to medical but he said Alexander is on code one lockdown for 2 days now nobody can go to medical and he laughed at me. Cant go to medical

[Doc. 82-1 at 2 (errors uncorrected)]. The grievance was marked as having been received on June 8, 2018. [See Doc. 82-1 at 2]. This grievance was forwarded to the facility head for investigation the same day pursuant to PREA and the NCDPS Sexual Abuse Policy. [Doc. 82-1 at 3, 5]. Plaintiff claims that footage from the May 14, 2018 incident has since been destroyed to cover it up. [Doc. 82 at 3]. There are no PREA investigation materials from the May 14, 2018 incident before the Court now.

Defendant Butler forecasts only evidence relative to a separate incident with Plaintiff on May 18, 2018, despite Plaintiff's plain allegation that the incident that is the subject of this action occurred on May 14, 2018. [See Doc. 76 at 3-5]. As to the May 18 incident, Defendant forecasts the following evidence. On May 18, 2018, Defendant Butler was assigned to the restrictive housing unit. That morning he gave Plaintiff a breakfast tray through

11

Case 5:19-cv-00016-MR    Document 90    Filed 08/09/21    Page 11 of 20

Plaintiff's trap door. [Doc. 76-6 at ¶¶ 6-7]. Plaintiff complained about his eggs and Defendant Butler told Plaintiff they were edible. Defendant Butler told Plaintiff that the facility was on a Code One lockdown and that he would be unable to get Plaintiff more eggs. [Id. at ¶¶ 8-10]. Plaintiff replied, "Fuck you! Get the Sergeant." [Id. at ¶ 11]. Defendant Butler asked for the tray back and Plaintiff refused. Defendant Butler gave Plaintiff a direct order to return the tray and Plaintiff again refused. Defendant then wrote a statement and provided it to the sergeant on duty. [Id. at ¶¶ 12-14]. Defendant Butler later passed out canteen slips. Plaintiff "started cussing at [Defendant] due to the prior encounter at breakfast regarding the tray and eggs." [Id. at ¶ 15]. Plaintiff called Defendant a "bitch," threatened to physically assault Defendant if Plaintiff ever got out of his cell, told Defendant that his mother was a prostitute and his wife was a "whore," and told Defendant to go "fuck yourself." [Id. at ¶¶ 17-18]. Because of Plaintiff's behavior, Defendant chose not to give him a canteen sheet. [Id. at ¶ 19]. During this exchange, Defendant Butler did not inappropriately touch Plaintiff or grab or squeeze Plaintiff's testicles. [Id. at ¶¶ 20, 22].

In support of his summary judgment motion, Defendant Butler submitted video footage taken in Plaintiff's wing on May 18, 2018. [Doc. 76-5; 6/1/2021 Docket Entry]. The footage begins at approximately 7:50 a.m.

12

and ends at approximately 8:15 a.m.[5] It shows Defendant Butler entering Plaintiff's wing in the restrictive housing unit. It shows Defendant Butler processing forms at each inmate's cell door with no apparent interaction with any inmate until Defendant Butler reached Plaintiff's cell. It shows Defendant Butler stopping at Plaintiff's cell door at 8:02 a.m. and engaging in a conversation with Plaintiff. There is, however, no audio in the recording, so the substance of their conversation is unknown. Defendant remained at Plaintiff's cell door for approximately one and a half minutes. Defendant appeared calm and composed during his entire interaction with Plaintiff. After the interaction with Plaintiff, Defendant continued processing forms outside the remaining cell doors. Defendant, however, submits no footage of the earlier interaction with Plaintiff involving Plaintiff's breakfast and no footage of the incident on May 14, 2018 that is the subject of the Complaint.

On May 22, 2018, Alexander staff received a grievance and letter from Plaintiff regarding the May 18, 2018 incident.[6] [Doc. 76-4 at 1]. A PREA investigation was undertaken and Defendant was relieved of his post duties

---

[5] The video footage skips ahead by seconds and sometimes minutes many times during the recording. Although nothing significant appears to be missing, there is no explanation why the recording was made or submitted this way.

[6] This grievance and letter are not included in the summary judgment materials submitted by either party. It is unclear why Plaintiff's May 14, 2018 grievance was not marked received until June 8, 2018, while Plaintiff's grievance regarding the May 18, 2018 incident was marked received on May 22, 2018.

13

in restrictive housing. [See id. at 1-12]. In his Witness Statement, Plaintiff provided the following:

> On May 18 2018 in the morning when officer Butler was passing out forms to purchase canteen he did not give me a form. I asked why he didn't give me a form and he said I would have to masturbate in front of him in order to get a canteen form. Of course I did not or will ever. It was to humiliate me and ongoing as was prior sexual harassment.

[Id. at 11 (errors uncorrected)]. The Incident Report provides that "[v]ideo evidence only shows or suggests that officer Butler had the issue with the food tray in regard to being in front of inmate McClary's door." [Id. at 2]. The Report further states that the "[v]ideo evidence is included into this package." [Id. at 3]. Defendant Butler claimed then and attests now that he did not ask or instruct Plaintiff to get naked or to masturbate. [Doc. 76-6 at ¶ 21]. The Report also notes that Defendant Butler had previously "been involved in one other PREA related incident," while Plaintiff "has been involved in zero PREA related incidents." [Doc. 76-4 at 3]. Ultimately, the investigator found Plaintiff's PREA claim to be unsubstantiated. [Id.]. Plaintiff, however, was not written up for submitting a false PREA claim or charged with threatening staff in relation to this claim.[7] [Doc. 82 at 4].

---

[7] The NCDPS Sexual Abuse Policy provides that inmates who make false PREA claims may be subject to disciplinary action. [Doc. 76-3 at 31].

## V. DISCUSSION

In support of his motion for summary judgment, Defendant Butler argues that sovereign immunity bars Plaintiff's official capacity claim; that he did not sexually assault the Plaintiff on May 18, 2018, and the video footage supports this fact; and that qualified immunity bars Plaintiff's individual capacity claim. [Doc. 76]. Plaintiff, on the other hand, contends that the assault that is the subject of the Complaint occurred on May 14, 2018, not May 18; that Plaintiff's Eighth Amendment rights were violated by the May 14 assault; and that the video of the May 14 assault was improperly destroyed.

### A. Sovereign Immunity

A suit against a state official in his official capacity is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally, Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina). As such, Defendant is entitled to summary judgment on Plaintiff's official capacity claim.

### B. Sexual Assault

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). The Eighth Amendment also protects inmates from sexual abuse. Schwenk v. Hartford, 204 F.3d 1187, 1196-97 (9th Cir. 2000); Jackson v. Holley, 666 Fed. App'x 242, 244 (4th Cir. 2016) ("There can be little doubt that sexual abuse is repugnant to contemporary standards of decency, and that allegations of sexual abuse can amount to an Eighth Amendment violation."). "The Supreme Court has held, however, that 'not every malevolent touch by a prison guard gives rise to a federal cause of action.'" Jackson, 666 Fed. App'x at 244 (citing Wilkins v. Gaddy, 559 U.S.

34, 37, 130 S. Ct. 1175 (2010)). "An inmate who complains of a push or a shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins, 559 U.S. at 38, 130 S. Ct. 1175 (internals quotation marks omitted).

Here, the forecast of evidence taken in the light most favorable to the Plaintiff shows that Defendant Butler sexually assaulted Plaintiff on May 14, 2018 by reaching through Plaintiff's trap door and squeezing Plaintiff's testicles and penis. Plaintiff filed a grievance regarding the incident, which was marked received on June 8, 2018 and forwarded to the facility head for investigation pursuant to the PREA. The record, however, contains no documents regarding this PREA investigation or any video footage of this incident. Plaintiff contends the video footage has been destroyed.

The forecast of evidence also shows that, on May 18, 2018, Plaintiff and Defendant Butler had an exchange regarding Plaintiff's canteen sheet during which Butler told Plaintiff he would not give Plaintiff a sheet unless Plaintiff masturbated in front of Butler. Plaintiff submitted a grievance regarding this incident, which was referred for a PREA investigation. The investigator noted that Defendant had been involved in one previous PREA incident and Plaintiff had been involved in no previous PREA incidents. Assuming this is accurate and given that Plaintiff's grievance regarding the

May 14, 2018 incident was not marked received until June 8, 2018, a reasonable jury could conclude that Plaintiff did not submit the grievance regarding the May 14 incident until sometime after he submitted the grievance regarding the May 18 incident. A reasonable jury may also, therefore, question Plaintiff's credibility relative to the May 14 incident. A reasonably jury, on the other hand, may find that the discrepancy lies with Alexander's processing of grievance forms or with the investigator's documentation. In any case, the forecast of evidence shows that despite the finding that Plaintiff's grievance regarding the May 18 incident was unsubstantiated, Plaintiff was not charged with filing a false PREA claim.

The forecast of evidence also includes video footage of the May 18 canteen sheet incident. Defendant, however, despite claiming to believe the incident at issue occurred on May 18, 2018, failed to submit footage of the breakfast tray incident from earlier that morning. The forecast of evidence shows that this footage was preserved and submitted for review as part of the PREA investigation of that incident. If Defendant genuinely believes Plaintiff's claim is based on events from May 18, 2018, footage from the entire incident should have been submitted. At trial, a reasonable jury might question Defendant Butler's credibility in presenting only footage that shows him acting calmly but excluding other potentially relevant footage.

At best, it seems there was a breakdown in this case between or among Defendant Butler, employees of the NCDPS charged with collecting materials for investigation and discovery in this case, and/or Defendant's attorney. In any event, this case cannot be decided as a matter of law on the record before the Court now. Genuine issues of material fact remain for a jury and summary judgment for Defendant Butler on Plaintiff's individual capacity claim is, therefore, inappropriate. As such, the Court will deny Defendant's motion for summary judgment as to this claim.[8]

## VI. CONCLUSION

In sum, for the reasons stated herein, the Court grants summary judgment for Defendant on Plaintiff's official capacity claim and denies summary judgment for Defendant on Plaintiff's individual capacity claim because genuine issues of material fact remain for trial as to that claim. The Court denies Plaintiff's motions for reconsideration and default judgment and strikes Plaintiff's improper letters from the record.

---

[8] Moreover, because Plaintiff has forecast evidence that Defendant violated his constitutional rights and because the right to be free from sexual abuse by a prison guard was clearly established before the subject incident, Defendant is not entitled to the defense of qualified immunity on Plaintiff's claim. E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018). See Woodford v. Ngo, 548 U.S. 81, 118 (2006) (Stevens, J., dissenting) ("Accordingly, those inmates who are sexually assaulted by guards, or whose sexual assaults by other inmates are facilitated by guards, have suffered grave deprivations of their Eighth Amendment rights."). See also Chapman v. Willis, No. 7:12-CV-00389, 2013 WL 2322947, *7 (W.D. Va. May 28, 2013) (collecting cases).

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment [Doc. 75] is **GRANTED IN PART** as to Plaintiff's official capacity claim and **DENIED IN PART** as to Plaintiff's individual capacity claim against Defendant Butler.

**IT IS FURTHER ORDERED** that:

(1) Plaintiff's Motion for Reconsideration [Doc. 69] is **DENIED**;

(2) Plaintiff's Motion for Default Judgment [Doc. 71] is **DENIED**;

(3) Plaintiff's letter's [Docs. 70, 87, 88] are hereby **STRICKEN** from the record in this matter.

**IT IS SO ORDERED**.

Signed: August 9, 2021

Martin Reidinger
Chief United States District Judge